UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **ROBERT MCQUEEN,**<br>    Plaintiff | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-174** |
| **JAMES M. LEBLANC, ET AL.,**<br>    Defendants | **SECTION: "E" (1)** |

## ORDER AND REASONS

Before the Court is a Motion for Summary Judgment filed by Defendants, Robert Tanner (the "Warden"), Wayne Cook (the "Assistant Warden"), and Dr. Casey McVea (the "Medical Director").[1] In the motion, Defendants argue that each of them is entitled to qualified immunity. Plaintiff Robert McQueen ("McQueen") opposes Defendants' motion.[2] For the following reasons, the motion for summary judgment is **GRANTED**.

## FACTUAL BACKGROUND

Plaintiff is a prisoner sentenced to the custody of the Louisiana Department of Public Safety and Corrections ("DPSC") and is confined to the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana.[3] Plaintiff has been incarcerated at RCC since 2008.[4] In May 2009, Plaintiff allegedly began experiencing excretory difficulties resulting in abdominal pain.[5] Plaintiff avers that he communicated this pain

---

[1] R. Doc. 74.
[2] R. Doc. 79. Plaintiff's opposition failed to comply with Local Rule 6.2, which requires that the opposition to a motion for summary judgment include a separate and concise statement of the material facts that the opponent contends present a genuine issue. The Court ordered Plaintiff to amend his statement of uncontested material facts to: (1) controvert, specifically by number, the material facts represented by defendants as uncontested; and (2) list any additional facts Plaintiff contends are in dispute. R. Doc. 86. Plaintiff filed an amended statement, albeit late, but failed to cite and attach competent summary judgment evidence to controvert the material facts in the Defendants' statement. *See* R. Doc. 88.
[3] R. Doc. 3 at 5; R. Doc. 65 at 1.
[4] R. Doc. 65 at 2.
[5] R. Doc. 65 at 2. Plaintiff describes the difficulties he experienced as "trouble using the bathroom." *See* R. Doc. 79 at 1.

1

to medical officials through the RCC's medical notification system.[6] Plaintiff further argues that both Tanner and Cook, the warden and assistant warden of RCC, respectively, were made "consciously aware" of his medical issues.[7]

Plaintiff states that, despite his complaints, he was not prescribed any medication until June 2010, when he was prescribed two laxatives: Metamucil and Surfak.[8] Plaintiff notes that these medications proved ineffective, and he was prescribed Miralax shortly thereafter.[9] According to Plaintiff, this "triple-laxative regimen" continued until February 2011, when he was taken off of Miralax for health and safety reasons.[10] Plaintiff notes he began experiencing "severe abdominal pain and bloating" after taking the laxatives daily for a year.[11] Moreover, Plaintiff alleges he was prescribed a number of additional laxatives and prescriptions in July 2011, the combination of which "led to increased abdominal pain."[12] Plaintiff was prescribed laxatives through May 2014. Dr. McVea did not become the Medical Director until February 2012.

According to Plaintiff, he was finally referred to an outside specialist for a colonoscopy in November 2012.[13] However, Plaintiff argues that he was first made aware that a colonoscopy was needed years prior, at some point in 2010 while he was being treated by Dr. LaRavia, the predecessor to Dr. McVea.[14] Plaintiff avers that Dr. McVea's replacement of Dr. LaRavia during the interim time period led to the delay in

---

[6] R. Doc. 65 at 2.
[7] R. Doc. 65 at 2.
[8] R. Doc. 65 at 3–4; R. Doc. 79 at 2–3.
[9] R. Doc. 79 at 2.
[10] R. Doc. 79 at 2. Plaintiff notes that the "medication warned that it should not be taken for extended periods of time as it may result in dependence on laxatives and chronic constipation." *See* R. Doc. 79 at 2.
[11] R. Doc. 79 at 2.
[12] R. Doc. 79 at 2–3.
[13] R. Doc. 65 at 3; R. Doc. 79 at 3.
[14] R. Doc. 65 at 3; R. Doc. 79 at 3.

scheduling Plaintiff's colonoscopy procedure.[15] Plaintiff further argues that the procedure was then cancelled for "non-medical reasons" on February 13, 2013.[16] Plaintiff surmises that the procedure was cancelled "to curb costs by attempting to limit outside clinic fees."[17]

Plaintiff eventually underwent a colonoscopy in July 2013.[18] However, the procedure failed to reveal an "instant solution" to Plaintiff's gastrointestinal problems, and it was recommended that an EGD be performed.[19] The EGD procedure was formally requested on October 10, 2013, approximately one month after Plaintiff's colonoscopy follow-up.[20] Before Plaintiff could undergo the EGD, an upper GI series was scheduled and performed on January 23, 2014.[21] According to Plaintiff, the EGD was then performed on April 22, 2014, "nearly an entire year" after Plaintiff was informed that he should have the procedure.[22] Plaintiff notes that it was only after the EGD procedure, and a subsequent follow-up visit, that he was prescribed a medication that relieved the pain he began experiencing in 2009.[23]

---

[15] *See* R. Doc. 65 at 3; R. Doc. 79 at 3. Specifically, Plaintiff states that Dr. LaRavia recommended that he undergo a colonoscopy at some point in 2010. Before he could undergo the procedure, however, Plaintiff notes that Dr. McVea replaced Dr. LaRavia as the Medical Director of RCC. R. Doc. 79 at 3. It was not until two years later that Plaintiff was notified that he was being referred to an outside specialist for a consultation with regard to a possible colonoscopy. R. Doc. 65 at 3.
[16] *See* R. Doc. 65 at 3; R. Doc. 79 at 3.
[17] R. Doc. 79 at 3. Plaintiff "believes it was cancelled by Dr. McVea and/or the other two defendants in order to curb costs by attempting to limit outside clinic fees." R. Doc. 79 at 3.
[18] R. Doc. 65 at 4; R. Doc. 79 at 4.
[19] R. Doc. 79 at 4. Plaintiff explains that, after undergoing the procedure, the physicians were unable to pinpoint the exact cause of Plaintiff's complaints and ordered further testing. R. Doc. 79 at 4. The physicians then ordered an esophagogastroduodenoscopy ("EGD"). R. Doc. 65 at 4.
[20] R. Doc. 79 at 4. The parties dispute the exact time at which the EGD request was made. Plaintiff argues that he notified Dr. McVea of the EGD request immediately after undergoing his colonoscopy, but Defendants suggest that the EGD request was not made until after Plaintiff's colonoscopy follow-up. R. Doc. 79 at 4.
[21] R. Doc. 79 at 4. Plaintiff argues that the upper GI series was performed prior to the EGD "per LAK request." R. Doc. 79 at 4. However, Plaintiff avers that there is no record of any physician making such a request, bar Dr. McVea's "self-serving note" that LAK made such a request. R. Doc. 79 at 4.
[22] R. Doc. 79 at 4.
[23] R. Doc. 79 at 4. Plaintiff was prescribed Linzess, which is used to treat certain types of bowel problems, on May 21, 2014. R. Doc. 79 at 4.

Plaintiff represents that he continues to take this medication daily and is "unable to defecate without its aid."[24] According to Plaintiff, his most recent medical diagnosis is that he suffers from "severe GERD" and "pelvic dyssynergia."[25]

## PROCEDURAL HISTORY

On January 23, 2014, Plaintiff filed suit under 42 U.S.C. § 1983 against various state prison officials, arguing that his Eighth Amendment rights to adequate medical care had been violated.[26] Plaintiff initially named as Defendants: (1) James M. LeBlanc, the DPSC Secretary; (2) Dr. Raman Singh, the DPSC medical director; (3) Robert Tanner, the RCC warden; (4) Wayne Cook, an assistant warden at RCC; (5) Dr. Dennis LaRavia, the former RCC medical director; (6) Dr. Casey McVea, the current RCC medical director; (7) Bessie Carter, a nursing director at RCC; and (8) Lesley Temples, an RCC nursing coordinator.[27] Defendant LaRavia was dismissed as a party on August 21, 2014.[28]

On February 2, 2015, the Defendants filed an initial motion for summary judgment, arguing that "no genuine issue of material fact exists regarding whether the defendants are entitled to qualified immunity."[29] After conducting limited discovery with respect to the motion for summary judgment, Plaintiff voluntarily dismissed all claims against LeBlanc, Singh, Carter, and Temples.[30] At this time, the only Defendants remaining in this matter are Tanner, Cook, and McVea (collectively, "the Defendants").

---

[24] R. Doc. 79 at 4.
[25] R. Doc. 79 at 4. Pelvic dyssynergia is "characterized by impaired coordination between pelvic floor relaxation and abdominal wall motion, which is necessary for normal defecation." *See* R. Doc. 79 at 4.
[26] R. Doc. 3 at 5.
[27] R. Doc. 3 at 4–5.
[28] *See* R. Doc. 23.
[29] R. Doc. 46 at 1.
[30] *See* R. Docs. 52, 59.

On May 21, 2015, pursuant to this Court's Order,[31] Plaintiff amended his complaint to allege factual allegations intended to defeat a qualified immunity defense with regard to the remaining Defendants.[32] On July 10, 2015, Defendants Tanner, Cook, and McVea filed a second motion for summary judgment, again asserting the defense of qualified immunity.[33] Plaintiff filed a response on August 24, 2015,[34] and Defendants filed a reply on August 28, 2015.[35] It is this motion and the related briefs that are currently before the Court.

## **LEGAL STANDARD**

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[36] "An issue is material if its resolution could affect the outcome of the action."[37] When assessing whether a material factual dispute exists, the Court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[38] All reasonable inferences are drawn in favor of the non-moving party.[39] There is no genuine issue of material fact if, even viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party, thus entitling the moving party to judgment as a matter of law.[40]

---

[31] *See* R. Doc. 64.
[32] R. Doc. 65.
[33] R. Doc. 74.
[34] R. Doc. 79.
[35] R. Doc. 82.
[36] Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
[37] *DIRECTV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005).
[38] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). *See also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000).
[39] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[40] *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002).

If the dispositive issue is one on which the moving party will bear the burden of persuasion at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'"[41] If the moving party fails to carry this burden, the motion must be denied. If the moving party successfully carries this burden, the burden of production then shifts to the non-moving party to direct the Court's attention to something in the pleadings or other evidence in the record setting forth specific facts sufficient to establish that a genuine issue of material fact does indeed exist.[42]

If the dispositive issue is one on which the non-moving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the non-movant's claim, or (2) affirmatively demonstrating that there is no evidence in the record to establish an essential element of the non-movant's claim.[43] If the movant fails to affirmatively show the absence of evidence in the record, its motion for summary judgment must be denied.[44] Thus, the non-moving party may defeat a motion for summary judgment by "calling the Court's attention to supporting evidence already in the record that was overlooked or ignored by the moving party."[45] "[U]nsubstantiated assertions are not competent summary judgment evidence. The party opposing summary judgment is required to identify specific evidence in the record and to

---

[41] *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (quoting *Golden Rule Ins. Co. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)).
[42] *Celotex*, 477 U.S. at 322–24.
[43] *Id.* at 331–32 (Brennan, J., dissenting).
[44] *See id.* at 332.
[45] *Id.* at 332–33. The burden would then shift back to the movant to demonstrate the inadequacy of the evidence relied upon by the non-movant. Once attacked, "the burden of production shifts to the non-moving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Id.* at 332–33 & n.3.

articulate the precise manner in which that evidence supports his or her claim. 'Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment.'"[46]

## ANALYSIS

Plaintiff filed suit under 42 U.S.C. § 1983 for violations of his Eighth Amendment "right to minimally adequate healthcare while a [state] prisoner."[47] In response, Defendants Tanner, Cook, and McVea have filed the present motion for summary judgment, contending that "no genuine issue of material fact exists regarding whether the defendants are entitled to qualified immunity from suit."[48]

I. *QUALIFIED IMMUNITY STANDARD*

The doctrine of qualified immunity shields federal and state officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[49] "When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense."[50] To discharge this burden, the plaintiff must prove: (1) that the official violated a statutory or constitutional right; and (2) that the right was "clearly established" at the time of the challenged conduct.[51] "If the plaintiff fails to state a constitutional claim or if the defendant's conduct was objectively reasonable under clearly established law, then the government official is entitled to

---

[46] *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Celotex*, 477 U.S. at 324; *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) and quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)).
[47] *See* R. Doc. 65 at 1.
[48] R. Doc. 74 at 1.
[49] *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).
[50] *Id.*
[51] *Ashcroft v. Al-Kidd*, 563 U.S. 731, 131 S. Ct. 2074, 2080 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). *See also Club Retro*, 568 F.3d at 194.

qualified immunity."[52] Further, the United States Supreme Court has reaffirmed that lower courts have discretion to decide which of the two prongs of the qualified-immunity analysis to tackle first.[53]

"Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law, and courts will not deny immunity unless existing precedent placed the statutory or constitutional question beyond debate."[54] Unless all reasonable persons in the defendant's circumstances would have known that the conduct in question violated the Constitution, the defendant is entitled to qualified immunity.[55]

II.     PLAINTIFF'S CLAIMS AGAINST TANNER, COOK, & DR. MCVEA

Plaintiff asserts section 1983 claims against Tanner, Cook, and Dr. McVea for violations of the Eighth Amendment prohibition against cruel and unusual punishment.[56] Specifically, Plaintiff argues that the Defendants violated his Eighth Amendment rights to "minimally adequate healthcare."[57]

With respect to the first prong of the qualified immunity standard—*i.e.*, whether the Defendants violated Plaintiff's constitutional rights—the Eighth Amendment requires a showing of deliberate indifference.[58] "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct

---

[52] *Hampton v. Oktibbeha Cnty. Sheriff Dep't*, 480 F.3d 358, 363 (5th Cir. 2007) (citing *Easter v. Powell*, 467 F.3d 459, 462 (5th Cir. 2006)). *See also Oporto v. Moreno*, 445 F. App'x 763, 765–66 (5th Cir. 2011).
[53] *Ashcroft*, 131 S. Ct. at 2080 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). *See also Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013).
[54] *Whitley*, 726 F.3d at 638 (internal quotation marks and citations omitted).
[55] *Batiste v. Theriot*, 458 F. App'x 351, 354 (5th Cir. 2012). *See also Bone v. Dunnaway*, No. 14-2788, 2015 WL 5013871, at *4 (E.D. La. Aug. 24, 2015).
[56] *See* R. Doc. 65 at 1.
[57] R. Doc. 65 at 1.
[58] *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 828–29 (1994); *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Estelle v. Gamble*, 429 U.S. 97 (1976).

demonstrates deliberate indifference to a prisoner's serious medical needs, constituting an unnecessary and wanton infliction of pain."[59]

Deliberate indifference is an "extremely high" standard to meet.[60] To prove that a prison official acted with deliberate indifference, the plaintiff must show that "the official was subjectively aware of and disregarded a serious risk of harm to the inmate."[61] A prison official acts with deliberate indifference only if (1) "he knows that an inmate faces a substantial risk of serious bodily harm" and (2) "he disregards that risk by failing to take reasonable measures to abate it."[62] "[T]he prison official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[63]

    a. *Dr. McVea*

Plaintiff argues that Dr. McVea, the Medical Director at RCC,[64] acted with deliberate indifference and violated Plaintiff's Eighth Amendment rights by (1) "continuing to prescribe the Plaintiff laxatives;" (2) "changing Dr. LaRavia's prescribed

---

[59] *Rodrigue v. Grayson*, 557 F. App'x 341, 344 (5th Cir. 2014) (quoting *Easter*, 467 F.3d at 463). *See also Wilson*, 501 U.S. at 297. "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006) (citing *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1187 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002)). Deliberate indifference to serious medical needs of prisoners constitutes "the unnecessary and wanton infliction of pain, proscribed by the Eighth Amendment." *See, e.g.*, *Estelle*, 429 U.S. at 104; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999).
[60] *Gobert*, 463 F.3d at 346 (internal quotation marks and citations omitted).
[61] *Monceaux v. White*, 266 F. App'x 362, 366 (5th Cir. 2008). Courts have stated that for a risk of harm to be "serious," the plaintiff must prove that he or she had a "serious medical need." *Farmer*, 511 U.S. at 835. *See also Gaines v. U.S.*, 498 F. App'x 415, 416 (5th Cir. 2012).
[62] *Gobert*, 463 F.3d at 346 (citing *Farmer*, 511 U.S. at 847; *Reeves v. Collins*, 27 F.3d 174, 176–77 (5th Cir. 1994)).
[63] *See Smith v. Harris*, 401 F. App'x 952, 953 (5th Cir. 2010) (citing *Farmer*, 511 U.S. at 837).
[64] Dr. McVea replaced Dr. LaRavia as RCC's Medical Director in 2012. *See* R. Doc. 65 at 3.

diagnostic care, a colonoscopy;" and (3) "delaying diagnostic treatment."[65] Dr. McVea asserts qualified immunity as to each.[66] The Court will address each argument in turn.

### i. Continued Laxative Prescriptions

Plaintiff contends Dr. McVea acted with deliberate indifference by "continuing to prescribe the Plaintiff laxatives and knowingly exposing Plaintiff to a sufficiently substantial risk of serious damage to his excretory functions."[67] Plaintiff was allegedly prescribed laxatives consistently for nearly four years, until May 2014.[68] The laxatives Plaintiff was prescribed prior to May 2014, when he was prescribed Linzess, were Metamucil, a fiber supplement, and Surfak, a stool softener.[69] According to Plaintiff, due to his continued use of laxatives, he is consequently "unable to have a bowel movement without the aid of medication."[70] Dr. McVea counters that he did not act with deliberate indifference, as there is no evidence that he "intentionally treated plaintiff's condition (constipation) incorrectly by prescribing laxatives."[71]

The Court finds that Dr. McVea did not act with the requisite state of mind in prescribing Plaintiff laxatives to constitute deliberate indifference. The deliberate-indifference inquiry requires the plaintiff to establish that the defendant acted with "subjective knowledge." The prison official must know that an inmate faces a "substantial risk of serious bodily injury" and "disregard[] that risk by failing to take reasonable measures to abate it."[72] In this case, Plaintiff argues that it is "common

---

[65] *See* R. Doc. 65 at 4–5.
[66] *See generally* R. Doc. 74.
[67] R. Doc. 65 at 5.
[68] R. Doc. 65 at 3.
[69] R. Doc. 74-3 at 4. Plaintiff was also prescribed Miralax shortly after he began taking Metamucil and Surfak. R. Doc. 79 at 2. However, Plaintiff was taken off of Miralax in February 2011 for health reasons. R. Doc. 79 at 2. *See also supra* note 10.
[70] R. Doc. 65 at 5.
[71] R. Doc. 74-2 at 18.
[72] *See Gobert*, 463 F.3d at 346 (citing *Farmer*, 511 U.S. at 847; *Reeves*, 27 F.3d at 176–77).

10

knowledge that excessive use of laxatives gradually causes 'reflex constipation'"[73] and that the bowel function may become permanently impaired from the excessive use of laxatives.[74] Despite this Court's order giving Plaintiff an opportunity to amend his statement of contested facts,[75] Plaintiff still has not provided competent summary judgment evidence in support of his arguments.[76] Plaintiff has failed to point to facts or evidence suggesting that Dr. McVea, personally, knew the consequences of a continued laxative regimen and that Dr. McVea acted with the intent to cause those consequences.[77] Summary judgment is granted on this claim.

        ii.        <u>Changed Diagnostic Care</u>

Plaintiff further argues that Dr. McVea acted with deliberate indifference by changing the orders of Dr. LaRavia, the former Medical Director of RCC.[78] After replacing Dr. LaRavia, Dr. McVea allegedly referred Plaintiff to an outside specialist before Plaintiff could undergo the colonoscopy ordered by Dr. LaRavia.[79] According to Plaintiff, "[t]his conscious decision to disregard previously prescribed diagnostic care resulted in Plaintiff experiencing unnecessary abdominal pain and discomfort."[80]

---

[73] R. Doc. 79 at 10.
[74] R. Doc. 79 at 10. *Cf.* R. Doc. 74-3 ("Affidavit of Dr. Casey McVea"). Dr. McVea states that the laxatives prescribed to Plaintiff "do not pose a substantial risk of serious harm to excretory function and are entirely appropriate treatments for chronic constipation." R. Doc. 74-3 at 4. Plaintiff has failed to offer any facts or evidence to contradict Dr. McVea's statements or to suggest that Dr. McVea acted with the intent required to state a deliberate-indifference claim.
[75] *See* R. Doc. 86; *supra* note 2.
[76] *See* R. Doc. 88.
[77] *See, e.g.*, *Morgan v. Tex. Dep't of Criminal Justice McConnell Unit*, 537 F. App'x 502, 507 (5th Cir. 2013). In *Morgan*, the Fifth Circuit concluded that a physician's continued treatment of a prisoner with Kenalog injections did not rise to the level of deliberate indifference, despite the alleged side effects of those injections. *Id.* The court noted that, although the physician's actions may be "incorrect" or even "negligent," the plaintiff failed to make a showing of deliberate indifference because the plaintiff did not "allege or point to circumstances that would suggest [the physician] prescribed the antibiotic cream with knowledge that the cream would pose 'a substantial risk of serious harm,' or that such a risk would have been obvious." *Id.* (citing *Farmer*, 511 U.S. at 847).
[78] R. Doc. 65 at 5.
[79] *See* R. Doc. 79 at 3.
[80] R. Doc. 65 at 5.

The Court is not persuaded by Plaintiff's argument. It is well accepted that "[c]onsidering and failing to follow the recommendations of another treating physician does not amount to deliberate indifference."[81] The Court agrees with Dr. McVea that a "disagreement amongst medical providers about the type or amount of treatment needed is not indicative of deliberate indifference."[82] "Disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs."[83] Summary judgment on this claim is proper.

### iii. Delayed Medical Treatment

Plaintiff also maintains that Dr. McVea acted with deliberate indifference by "delaying diagnostic treatment prescribed by Plaintiff's physicians."[84] Particularly, Plaintiff argues that Dr. McVea delayed Plaintiff's colonoscopy and a subsequent EGD examination and that the "delay in receiving the prescribed diagnostic treatment resulted in Plaintiff experiencing unnecessary abdominal pain and discomfort."[85]

To prevail, Plaintiff must "raise genuine issues as to facts which, if true, would clearly evince the medical need in question and indicate that the denial of treatment was much more likely than not to result in serious medical consequences, and additionally that the defendants had sufficient knowledge of the situation so that the denial of

---

[81] *Gobert*, 463 F.3d at 349 n.32 (citing *Stewart v. Murphy*, 174 F.3d 530, 535 (5th Cir. 1999)).
[82] R. Doc. 74-2 at 12 (citing *Estelle*, 429 U.S. at 107 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter of medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.")). *See also Montes v. McAdam*, No. 5:14-cv-005-C, 2014 WL 5454843, at *3 (N.D. Tex. Oct. 27, 2014) ("[A]llegations that medical staff are mistaken in their diagnosis of the prisoner's medical condition does not meet the deliberate indifference standard. Nor do allegations that medical personnel should have attempted different diagnostic testing or alternative methods of treatment.") (citing *Stewart*, 174 F.3d at 534; *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997)).
[83] *McBride v. Buchanan*, No. 6:09cv519, 2010 WL 2267553, at *7 (E.D. Tex. Apr. 29, 2010) (quoting *Norton*, 122 F.3d at 292). *See also Galindo v. Altenberg*, No. EP-11-CV-325-DB-RFC, 2013 WL 211105, at *15 (W.D. Tex. Jan. 18, 2013) (holding that "disagreements between doctors of the proper course to pursue does not establish deliberate indifference").
[84] R. Doc. 65 at 5.
[85] R. Doc. 65 at 5.

medical care constituted wanton disregard" of his rights.[86] Moreover, the delay of medical care can constitute an Eighth Amendment violation but only "if there has been deliberate indifference [that] results in *substantial harm*."[87]

In this case, there is no evidence whatsoever that the delay in Plaintiff's treatment actually triggered serious medical consequences or resulted in substantial harm to Plaintiff.[88] Rather, Dr. McVea represents that Plaintiff "suffered no harm while waiting for the tests."[89] According to Dr. McVea, Plaintiff "would have felt the same and had the same symptoms regardless of whether he was waiting for another diagnostic test."[90] Plaintiff fails to convince the Court otherwise, *i.e.*, that the delay in treatment caused Plaintiff to suffer substantial harm.

Plaintiff acknowledges that, once the colonoscopy was performed, the physicians were unable to identify the cause of Plaintiff's complaints and simply ordered further testing.[91] It was only after additional testing that Plaintiff was prescribed Linzess, the medication that eventually relieved his pain.[92] Although Plaintiff may have suffered pain and discomfort while awaiting treatment, "delays in treatment that do not cause lasting complications do not constitute deliberate indifference."[93] Plaintiff does allege that he is now unable to "defecate" without the aid of this medication, but Plaintiff fails to offer

---

[86] *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985) (citing *Smith v. Wade*, 461 U.S. 30, 39 n.8 (1983); *Woodall v. Foti*, 648 F.2d 268 (5th Cir. 1981)). *See also Shafer v. Carmona*, 71 F. App'x 350, 354 (5th Cir. 2003).
[87] *Easter*, 467 F.3d at 463 (emphasis added) (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993)).
[88] Plaintiff specifically admits that "the physicians did not find an instant solution" once the colonoscopy was performed. *See* R. Doc. 79 at 4.
[89] R. Doc. 74-3 at 2, ¶21.
[90] R. Doc. 74-3 at 2, ¶20.
[91] *See* R. Doc. 79 at 4. Further, Dr. McVea surmises that Plaintiff suffers from "functional constipation," a condition for which there is no identifiable medical cause.
[92] R. Doc. 79 at 4–5.
[93] *Guzman v. Cockrell*, No. 9:10-cv-111, 2012 WL 4017926, at *7 (E.D. Tex. Sept. 4, 2012) (citing *McGiffin v. Clayton*, No. 08-40213, 2009 WL 577721, at *1 (5th Cir. Mar. 6, 2009) (per curiam); *Parker v. Doty*, No. 7:08-cv-029-0, 2009 WL 804098, at *2 (N.D. Tex. Mar. 25, 2009); *James v. UTMB Medical Center*, No. 6:09-cv-489, 2010 WL 3429583, at *4 (E.D. Tex. Aug. 27, 2010)).

any facts or evidence that establish a viable connection between the delay in treatment and his excretory dysfunction. Summary judgment is proper on Plaintiff's claims against Dr. McVea for the delay in treatment.

    b. *Tanner and Cook*

As with Dr. McVea, Plaintiff argues that Defendants Tanner and Cook[94] also acted with deliberate indifference to his medical needs by "delaying [the] diagnostic treatment prescribed by Plaintiff's physicians."[95] Specifically, Plaintiff contends that Tanner and Cook "were both made consciously aware of Plaintiff's medical issues" and that Cook was "specifically informed of the unnecessary pain and delay in receiving diagnostic treatment."[96]

However, Plaintiff fails to prove that Defendants Tanner and/or Cook actually delayed, or participated in delaying, his treatment. Plaintiff only offers conclusory assertions that the Defendants, as a group, delayed Plaintiff's colonoscopy.[97] Although Plaintiff speculates that Defendants Tanner and Cook were somehow involved in delaying this test,[98] this conclusion is not supported by the facts in the record. Plaintiff altogether fails to allege facts to justify the allegation that Tanner or Cook actively participated in or supervised Plaintiff's medical care, let alone the conclusion that Tanner or Cook acted with deliberate indifference to delay Plaintiff's colonoscopy.[99]

---

[94] Defendants Tanner and Cook serve as the warden and the assistant warden, respectively, of the correctional center at which Plaintiff was incarcerated. *See* R. Doc. 3 at 4–5.
[95] R. Doc. 65 at 5.
[96] *See* R. Doc. 65 at 2.
[97] R. Doc. 65 at 5.
[98] R. Doc. 79 at 3, 8, 10, 12. For example, Plaintiff states that "[e]ach Defendant violated Mr. McQueen's constitutional right to adequate medical care." *See* R. Doc. 79 at 8. However, Plaintiff fails to justify this statement, instead noting that the "limited record shows that none did more so than Dr. McVea." R. Doc. 79 at 8. Thus, Plaintiff seems to recognize the weakness in his claims against Defendants Tanner and Cook, surmising that his claims against Dr. McVea are stronger.
[99] Plaintiff can only speculate that the colonoscopy was cancelled by Tanner and/or Cook, as no evidence has been offered connecting either Defendant to the cancellation. *See* R. Doc. 82 at 9.

Defendants Tanner and Cook are entitled to qualified immunity, and the motion for summary judgment is granted as to them.

## **CONCLUSION**

For the foregoing reasons, Defendants Dr. Casey McVea, Robert Tanner, and Wayne Cook are entitled to qualified immunity from Plaintiff's claims against them *in toto*.

Accordingly;

**IT IS ORDERED** that the motion for summary judgment is **GRANTED**, and Plaintiffs' claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that the motion to convert the pretrial conference into a status conference[100] is **DENIED AS MOOT**.

**New Orleans, Louisiana, this 30th day of September, 2015.**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[100] R. Doc. 87.